# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

|  |  |
|---|---|
| **CURTIS BRISTOL**, *et al.*, <br><br> *Plaintiffs,* <br><br> **v.** <br><br> **BUTTS COUNTY, GEORGIA**, *et al.*, <br><br> *Defendants.* | **CIVIL ACTION NO.** <br> **5:24-cv-00137-TES-CHW** |

## ORDER GRANTING-IN-PART DEFENDANTS' MOTIONS TO DISMISS

Following their arrests, Plaintiffs Curtis Bristol and Eddie Bethune filed a lawsuit asserting claims against Butts County, Georgia; its sheriff, Gary Long; and one of his deputies, Taylor Rich, for violations of the United States and Georgia Constitutions and Georgia law. Deputy Rich filed a Motion to Dismiss [Doc. 3] seeking dismissal of all claims asserted against him. [Doc. 3-2, p. 15]. Butts County and Sheriff Long also filed a Motion to Dismiss [Doc. 4] requesting the same relief. [Doc. 4-2, p. 15]. For the reasons explained below, the Court **GRANTS** Defendants' motions as to the federal claims and **REMANDS** the remaining issues to the Superior Court of Butts County, Georgia.

## FACTUAL BACKGROUND[1]

According to the Complaint [Doc. 1-1], Bristol drove his father's pick-up truck to a Waffle House in Jackson, Georgia, to pick up food for his grandmother. [Doc. 1-1, ¶ 11]. Bethune accompanied Bristol as a passenger in the truck. [*Id.* at ¶ 12]. After Bristol pulled into the Waffle House parking lot and parked the truck, Deputy Rich, who had been following Bristol and Bethune, pulled in behind them and turned on his squad car's emergency lights. [*Id.* at ¶¶ 13–14].[2] Once Deputy Rich reached the vehicle's window, he asked Bristol for his driver's license and registration. [*Id.* at ¶ 15]. Because

---

[1] When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). With that in mind, the Court must first address Plaintiffs' arguments that the Court should construe Defendants' motions as ones for judgment on the pleadings because Defendants "introduce information in their Motion to Dismiss that is outside of the pleadings[.]" [Doc. 8, p. 2]. While Plaintiffs contend that "is inappropriate," the Court notes that Defendants have only added two materials: a body camera video of the encounter and a copy of Bristol's arrest warrant. [*Id.*]; [Doc. 3-1 (arrest warrant)]; [Doc. 4-1 (same)]; [Doc. 6 (Notice of Filing Electronic Media (Video))]. As the Eleventh Circuit recently clarified, for a document to be considered on a motion to dismiss, it must only be "(1) central to the plaintiff[s'] claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, --- F.4th ---, 2024 WL 3384936 (11th Cir. July 12, 2024), at *6.

Plaintiffs do not challenge the authenticity of the arrest warrant or the video, and the Court finds that both are central to Plaintiffs' claims. Accordingly, the Court will consider the documents. *See id.*

But, in seeming stark contradiction to their own arguments, Plaintiffs included an investigation/expert report of legal consultant Kevin Condon with their Response [Doc. 8]. Condon's report covers his investigation into Butts County's hiring of Deputy Rich, as well as his analysis of Butts County's policies surrounding this incident. [Doc. 8-3]. That report will not be considered at this stage in the case. *Dailey v. A&W Concentrate Co.*, 519 F. Supp. 3d 668, 670 (N.D. Cal. 2021) ("It would also be improper for the Court to consider expert testimony, or the impacts thereof, at the pleadings stage.").

[2] The Complaint isn't clear about the exact traffic violations, but instead refers to them as "trivial traffic violations." [Doc. 1-1, ¶¶ 1-2]; [Doc. 8, p. 2]. Defendants contend the violations were improper lane change and failure to use a turn signal. [Doc. 3-2, p. 2]; [Doc. 5, Body Camera Video, 23:36:40-55]. Either way, Plaintiffs don't challenge the validity of the initial traffic stop.

the vehicle belonged to his father, Bristol called his father and asked for the vehicle's registration information. [*Id.*].

After receiving the information from Bristol, Deputy Rich returned to his squad car. [*Id.* at ¶ 16]. Bristol felt that Deputy Rich was taking too long, so Bristol approached Deputy Rich's squad car to ask for his supervisor's name. [*Id.*]. Instead of supplying a name, Deputy Rich instructed Bristol to return to his car. [*Id.*]. Bristol responded by saying "he didn't think he had to listen," but that he would still go back to his car. [*Id.*]. After Bristol began walking back to his car, Deputy Rich exited his squad car and placed Bristol under arrest for obstruction. [*Id.*]. Deputy Rich placed Bristol in handcuffs and sat him in the back of the squad car. [*Id.* at ¶¶ 19–21]. At the same time as Bristol's ongoing arrest, Bethune shared the details with others. [*Id.* at ¶ 21]. Deputy Rich instructed Bethune to stop talking. [*Id.* at ¶¶ 21-22]. Bethune didn't comply, so Deputy Rich arrested him, too. [*Id.*]. After arresting Bethune, Deputy Rich conducted a body search, which Plaintiffs allege involved Deputy Rich "grasping [Bethune's] genitals for an unreasonable and unusual amount of time." [*Id.* at ¶ 23]. Ultimately, officers charged both Bristol and Bethune with various offenses. [*Id.* at ¶ 2]. Bristol spent two days in jail, while Bethune spent about 45 minutes. [*Id.*].

Both Bristol and Bethune allege various constitutional and statutory violations under federal and Georgia law. First, Plaintiffs allege 42 U.S.C. § 1983 claims, including count one: First Amendment retaliation; count two: Fourth Amendment violations;

count three: False Affidavit of Deputy Taylor Rich; count four: Eighth Amendment violations; and count five: Fourteenth Amendment violations.

Under the Georgia Constitution, Plaintiffs allege in count six: violations of Article I, § 1 ¶ 1 for False Arrest and False Imprisonment; count seven: violations of Article I, § 1, ¶ 5 for Abuse and Restraint of Freedom of Speech; count eight: violations of Article I, § 1, ¶ 13 for False Arrest and False Imprisonment; and count nine: violations of Article I, § 1, ¶ 17 for Abuse of Prisoners.

Under Georgia law, Plaintiffs allege in count ten: violations of O.C.G.A. § 51-7-1, 40 for False Arrest; count eleven: violations of O.C.G.A. §§ 51-7-20, 22, 40 for False Imprisonment and False Imprisonment by Several Persons; count twelve: violations of O.C.G.A. §§ 51-7-40, 41 for Malicious Prosecution; and count thirteen: False Statements and Writings, Concealment of Facts, and Fraudulent Documents within Jurisdiction of State or Political Subdivisions.

Relying on Rule 12(b)(b) and the defense of qualified immunity, Defendant Rich asks this Court to dismiss Plaintiffs many claims against him. [Doc. 3]. Defendants Butts County and Sheriff Gary Long filed a separate motion putting forth similar arguments and qualified immunity theories. [Doc. 4].

## PLEADING STANDARD

Before getting to the merits, the Court must quickly address a pleading issue. In federal court, Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a

"short and plain statement of the claim showing that the pleader is entitled to relief."

And Federal Rule of Civil Procedure 10(b) requires a plaintiff to "state its claims . . . in

numbered paragraphs, each limited as far as practicable to a single set of

circumstances." Complaints that violate these rules are often referred to as "shotgun

pleadings." *Bryant v. Norfolk S. R.R.*, No. 5:20-cv-00225-TES, 2020 WL 5521044, at *3

(M.D. Ga. Sept. 14, 2020) (citations omitted). Shotgun pleadings include complaints that

contain "conclusory, vague, and immaterial facts that do not clearly connect to a

particular cause of action," and fail "to separate each cause of action or claim for relief

into distinct counts." *Id.* (quoting *McDonough v. City of Homestead*, 771 F. App'x 952, 955

(11th Cir. 2019)). "The most common type—by a long shot—is a complaint containing

multiple counts where each count adopts the allegations of all preceding counts,

causing each successive count to carry all that came before and the last count to be a

combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d

1313, 1321 (11th Cir. 2015)

Plaintiffs' Complaint is far from a work of art and comes perilously close to being

deemed a shotgun pleading. Some examples will help demonstrate the point. First,

Plaintiffs' Complaint commits the "mortal sin"—namely, it incorporates all preceding

factual assertions into the later counts. *See Weiland*, 792 F.3d at 1322; [Doc. 1-1, ¶¶ 34, 49,

85, 112, 130, 137, 160, 175, 192 & 210]. Put that together, and by count 13, Plaintiffs' re-

alleged at least 209 paragraphs into that final count. Second, the Complaint is replete

with "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322–23; *see, e.g.*, [Doc. 1-1, ¶ 28 ("LONG's unlawful policies, customs or practices caused constitutional violations of the rights of Plaintiffs.").

In cases like this one, "[p]leading a Complaint with facts and clarity is especially important," where Plaintiffs bring 13 claims against three different defendants. *Smith v. City of Pelham*, No. 2:17-CV-1320-VEH, 2018 WL 1993239, at *2 (N.D. Ala. Apr. 27, 2018). For these drafting ills, the Court very easily could have struck the Complaint and forced Plaintiffs to replead with a pleading that meets the federal rules. *Magluta v. Samples*, 256 F.3d 1282, 1285 (11th Cir. 2001). But, nonetheless, the Court presses on to the substance of the case.

## LEGAL STANDARD

When ruling on a Rule 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Twombly*, 550 U.S. at 572. A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Rule 8 does not require detailed factual allegations, it does require "more than [] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333; *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory

allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## DISCUSSION[3]

Section 1983 creates no substantive rights. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Rather, it provides a vehicle through which an individual may seek redress when his federally protected rights have been violated by an individual acting under color of state law. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim for relief under § 1983, a plaintiff must satisfy two elements. First, he must allege that an act or omission deprived him of a right, privilege, or immunity secured by the U.S. Constitution or laws of the United States. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, he must allege that the act or omission was committed by a state actor or a person acting under color of state law. *Id.*

Put simply, a "§ 1983 claim is predicated on an alleged violation of an underlying constitutional right." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005). "Absent the existence of an underlying constitutional right, no [§ 1983] claim will lie." *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987).

---

[3] At the outset, Plaintiffs abandoned many of their claims by not clearly responding to Defendants' arguments on those points. *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001). Further, Plaintiffs' Response did little to help their cause. Instead of pointing to relevant and binding federal law, Plaintiffs' Response cites Georgia cases and statutes that generally do not control on federal issues in this Court, such as qualified immunity. Plaintiffs' Response also failed to flesh out many of the confusing and circular claims made in their Complaint by virtue of the inartful pleading the Court previously described. Even so, the Court navigates the maze as best it can.

I.    <u>**Defendant Butts County, Georgia**</u>

"A local government can be directly responsible for a constitutional violation due to its acts or omissions." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1027 (11th Cir. 2001). In other words, a "local government may be held liable under § 1983 only for acts for which it is actually responsible." *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1287 (11th Cir. 1998). To evaluate whether a local government is liable under § 1983, a court must "identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997).

In their Complaint, Plaintiffs try to meet this burden against Butts County under a theory that in Georgia "sheriffs are 'county officers' and historically, courts have held counties liable for the actions of their sheriffs."[4] [Doc. 1-1, ¶ 7]. However, the clear mass of case law from the Eleventh Circuit disagrees with that premise. First, in *Grech v. Clayton County*, the Eleventh Circuit concluded that a Georgia sheriff is not a county policymaker for purposes of the sheriff's law enforcement duties. 335 F.3d 1326, 1347 (11th Cir. 2003). Indeed, in *Manders v. Lee*, the en banc Eleventh Circuit held that a Georgia sheriff was entitled to Eleventh Amendment immunity as an "arm of the state,"

---

[4] Plaintiffs are correct—the Georgia Constitution does refer to sheriffs as "county officers." Ga. Const. art. IX, § 1, ¶ III. But that doesn't answer the relevant question. The relevant question is, of course, whether the sheriff is a policymaker for the county.

not the county. 338 F.3d 1304, 1328 (11th Cir. 2003); *Townsend v. Coffee Cnty.*, 854 F.

Supp. 2d 1345, 1350 (S.D. Ga. 2011) ("The Eleventh Circuit has rejected the notion that a

Georgia county can be liable under § 1983 for the actions of members of a sheriff's

office, finding that, pursuant to the Georgia Constitution, a sheriff's office is

independent from the county in which it operates.").

Because the county does not have control over the sheriff or his deputies, the

county is not liable for the actions committed by Sheriff Long or his deputies when they

perform their law enforcement duties. *Hammond v. Gordon Cnty.*, 316 F. Supp. 2d 1262,

1279 (N.D. Ga. 2002); *Kemeness v. Worth Cnty.*, 449 F. Supp. 3d 1318, 1327 (M.D. Ga.

2020); *Franklin v. Twiggs Cnty.*, No. 5:23-CV-00183-TES, 2023 WL 4566055, at *4 (M.D.

Ga. July 17, 2023).

Plaintiffs did not counter Defendants' arguments on these points in their

Response. Instead, Plaintiffs just argued that Butts County is not entitled to qualified

immunity. Of course, qualified immunity does not apply to counties. *Leatherman v.*

*Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166 (1993); *Mendiola-*

*Martinez v. Arpaio*, 836 F.3d 1239, 1250 (9th Cir. 2016) ("But as a threshold matter,

Maricopa County is not eligible for qualified immunity because counties do not enjoy

immunity from suit—either absolute or qualified—under § 1983.") (citations omitted).

In the end, Plaintiffs' claims against Butts County, Georgia, cannot survive, and

the Court **DISMISSES** all claims against it.

## II.    <u>Official-Capacity Claims</u>

Plaintiffs also sued Sheriff Long and Deputy Rich in their official capacities. But those claims are also subject to dismissal. Without replowing too much of the same ground, it is well-established that sheriffs in Georgia are "arms of the state" while discharging most of their duties—including, as pertinent here, arresting and detaining individuals. *Richardson v. Quitman Cnty.*, 912 F. Supp. 2d 1354, 1366 (M.D. Ga. 2012) ("A Georgia sheriff is considered an 'arm of the State' when performing law enforcement functions, such as detaining and arresting suspects."); *Robinson v. McNeese*, No. 5:20-CV-00160-TES, 2020 WL 6566174, at *5 n.5 (M.D. Ga. Nov. 9, 2020) ("In this action, Defendant McNeese performed such law enforcement duties when he stopped Plaintiff's vehicle for a traffic violation and detained him. Therefore, Defendant McNeese is entitled to Eleventh Amendment immunity for claims against him in his official capacity."); *see also Manders*, 338 F.3d at 1328 ("Having applied the Eleventh Amendment factors, we conclude that Sheriff Peterson in his official capacity is an arm of the State, not Clinch County, in establishing use-of-force policy at the jail and in training and disciplining his deputies in that regard").

As an arm of the state, sheriffs—in their official capacity—are immune from suit in federal court under the Eleventh Amendment. *Rylee v. Chapman*, 316 F. App'x 901, 905 (11th Cir. 2009) ("The Eleventh Amendment to the United States Constitution bars suit in federal court against an 'arm of the state,' except where such immunity is waived

by the state or abrogated by Congress."). The same logic applies to Sheriff Long's

deputies. *Scruggs v. Lee*, 256 F. App'x 229, 232 (11th Cir. 2007) ("As employees of the

sheriff, deputies Howell and Peterson, in their official capacities, are also entitled to

Eleventh Amendment immunity.").

Accordingly, the Court **DISMISSES** Plaintiffs' claims against Sheriff Long and

Deputy Rich in their official capacities.

### III.    Individual-Capacity Claims

#### 1.    Qualified Immunity

"Qualified immunity shields government employees from suit in their individual

capacities for discretionary actions they perform [in carrying out] their duties." *Brooks v.*

*Miller*, 78 F.4th 1267, 1279 (11th Cir. 2023). "To determine whether qualified immunity

applies, we engage in a burden-shifting analysis." *Id.* at 1280. The first step requires a

defendant to show that he was acting within the scope of his discretionary authority

when committing the challenged act. *Johnson*, 2024 WL 3384936, at * 6. "Once the

defendant does that, the burden shifts to the plaintiff, who must show that qualified

immunity is not appropriate." *Miller*, 78 F.4th at 1280. To show that qualified immunity

is not appropriate, "the plaintiff must establish two things: (1) the defendant violated a

constitutional right, and (2) that constitutional right was 'clearly established' at the time

of the defendant's actions." *Johnson*, 2024 WL 3384936, at *6 (citing *Miller*, 78 F.4th at

1280). "While the defense of qualified immunity is typically addressed at the summary

judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

Plaintiffs' arguments regarding qualified immunity completely miss the mark. Instead of discussing federal qualified immunity, Plaintiffs argue their case solely under Georgia's official-immunity doctrine. For example, Plaintiffs argue that "[i]n Georgia, to defeat qualified immunity one must show that the public officer performed a ministerial act negligently or acted with malice or an intent to injure." [Doc. 8, p. 6]. No, that argument would be aimed at defeating official or qualified immunity under Georgia law. *Schultz v. Lowe*, 874 S.E.2d 842, 845 (Ga. Ct. App. 2022). Plaintiffs fail to engage with either element of qualified immunity in the federal context. Instead, Plaintiffs ask for additional time "to obtain affidavits and/or time . . . to conduct discovery on these issues." [*Id.* at p. 9]. However, for this case, the qualified immunity doctrine applicable to Plaintiffs' claims under § 1983 does not require additional time or discovery. With that in mind, the Court reviews each element of qualified immunity, including whether Plaintiffs allege a constitutional violation at all.

### a.    *Discretionary Authority*

Plaintiffs do not quibble with Defendants' assertion that they acted in their discretionary authority—nor could they. "It is well established that an arrest of someone suspected of violating the law is within the discretionary authority of a police

officer." *Johnson*, 2024 WL 3384936, at *7. Accordingly, the Court finds that Defendants acted within their discretionary authority for purposes of qualified immunity.

### b.    Constitutional Right

Because Defendants carried their burden of establishing that their conduct falls within their discretionary authority, Plaintiffs must now overcome the assertion of qualified immunity by showing Defendants violated their constitutional rights, and such violations were clearly established at the time of the incident. *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009). For this part of the analysis, the Court reviews each claim individually.

### i.    Probable Cause

The majority of Plaintiffs' claims hinge on one issue: probable cause. "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). To show probable cause, there need only be "a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). In other words, "innocent behavior frequently will provide the basis for a showing of probable cause." *Id.* "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every

defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Even without actual probable cause, however, a police officer is entitled to qualified immunity if he had only "arguable" probable cause to arrest someone. *See Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). Arguable probable cause "requires that reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendant [] *could have believed* that probable cause existed to arrest." *Vickers v. Georgia*, 567 F. App'x 744, 746 (11th Cir. 2014) (internal citations omitted). And an "arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

The Court looks to the actual elements of the charged offenses to determine if there was arguable probable cause. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) ("Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime and the operative fact pattern.") (internal citations omitted). First, the Court looks to Deputy Rich's probable cause to make the traffic stop. Second, the Court evaluates Deputy Rich's probable cause to arrest Bristol for obstruction. Finally, the Court follows the same process for Bethune's charge of disorderly conduct.

We begin with the easiest: Deputy Rich had probable cause to initiate the traffic stop because Bristol changed lanes without using a turn signal. *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Woods*, 385 F. App'x 914, 916 (11th Cir. 2010)

(finding that under Georgia law, "the officers had probable cause to conduct a traffic stop of Woods' vehicle based on his actual traffic violation of failing to signal while changing lanes").

Next, as to Bristol, Deputy Rich charged him with obstruction under O.C.G.A. § 16-10-21(a). [Doc. 1-1, ¶ 88]. That code section makes it a misdemeanor offense to "knowingly and willfully obstruct[ ] or hinder[ ] any law enforcement officer . . . in the lawful discharge of his or her official duties[.]" O.C.G.A. § 16-10-24(a); *see also Reese v. Herbert*, 527 F.3d 1253, 1273 (11th Cir. 2008). "A person's refusal to comply with an officer's lawful command constitutes obstruction under Georgia law." *Bridges v. City of Americus*, No. 1:09-CV-56 WLS, 2014 WL 1315339, at *7 (M.D. Ga. Mar. 31, 2014); *Townsend*, 854 F. Supp. 2d at 1358.[5]

Deputy Rich swore in his affidavit seeking an arrest warrant that Bristol obstructed his lawful discharge of lawful duties by "not obeying [Deputy Rich's] lawful orders during a traffic stop and threatening [his] safety by constantly moving and walking around. [Bristol] did verbally state that he was not going to obey my orders after being warned to remain in his vehicle multiple times." [Doc. 3-1, p. 1].

---

[5] Bristol argues that because prosecutors dropped the obstruction charge, there can be no probable cause. [Doc. 8, p. 4-5]. Not true in this circuit. *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990) ("That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself.").

The hinge-point for the obstruction charge, as the Court sees it, lies in whether Deputy Rich actually told Plaintiffs to stay in the car as he ran their information. If Deputy Rich did give that instruction, then arguable probable cause certainly exists because Bristol clearly disobeyed that lawful command. *Arsenault v. State*, 571 S.E.2d 456, 458 (Ga. Ct. App. 2002) (holding that "[o]fficers are authorized, for their own safety, to request that an individual remain in the car until their investigation is complete," and that a failure to comply "is a violation of O.C.G.A. § 16–10–24(a)"). If Deputy Rich never instructed Plaintiffs to stay in the vehicle, then there is likely no arguable probable cause for obstruction.

While Plaintiffs' Complaint is silent as to the issue, Defendants affirmatively assert that Deputy Rich gave that command. *See generally* [Doc. 1-1]; [Doc. 3-2, p. 2]. In response, Plaintiffs argue "there is no video evidence of Rich ordering Bristol to stay in his vehicle prior to Bristol approaching Rich's vehicle[.]" [Doc. 8, p. 5]. The body camera video does show Deputy Rich—within earshot of Bristol—explaining to another officer that he told Plaintiffs to stay in the vehicle. [Doc. 5, Body Camera Video, 23:37:00-08]. And, Plaintiffs' own video also shows Bristol getting back in the driver's seat at the behest of Deputy Rich. [Doc. 9, Cell Phone Video, 0:00–0:14]. In the end, Plaintiffs' Complaint and Response are not inconsistent with the conclusion that Deputy Rich told Bristol to stay the car at least one time. [Doc. 8, p. 5]; [Doc. 1-1, ¶ 16]. But the Court need not—and cannot—definitively decide that issue at this stage. And, taking the facts of

the Complaint as true as the Court must at this procedural stage, the Court will assume

that Deputy Rich did not tell Plaintiffs to stay in the car multiple times. That means

there is a less-than-convincing argument that Bristol violated Georgia's obstruction

statute on the facts before the Court.[6]

      But, in the end, the fight about whether Deputy Rich had probable cause to arrest

Bristol for obstruction really doesn't matter because he absolutely had probable cause to

arrest him for the traffic violations. To be sure, Georgia law makes it a misdemeanor to

change lanes without activating a turn signal when other cars are nearby. *See* O.C.G.A. §

40-6-1, *in connection with* O.C.G.A. § 40-6-123; *see also Keys v. State*, 878 S.E.2d 133, 135

(Ga. Ct. App. 2022). Additionally, Georgia law criminalizes improper lane changes.

O.C.G.A. § 40-6-48. And, in Georgia, individuals can be arrested for misdemeanor

traffic violations. *Govan v. City of McIntyre*, No. 5:16-CV-00503-TES, 2018 WL 3762997, at

*12 (M.D. Ga. Aug. 8, 2018) ("[T]he Supreme Court and Eleventh Circuit have held that

an arrest for a misdemeanor traffic violation does not run afoul of the Fourth

Amendment."); *United States v. Clark*, 32 F.4th 1080, 1088 (11th Cir. 2022) ("Under

Georgia law, failure to maintain a lane is an arrestable offense."); *Lopez v. State*, 650

S.E.2d 430, 433 (Ga. Ct. App. 2007). As the Supreme Court put it, "[i]f an officer has

---

[6] Here, the video clearly showed both Plaintiffs undoubtedly wanted a confrontation and intended to make sure Deputy Rich knew that they meant to push their First Amendment rights to the absolute limits, to the point of telling Deputy Rich about his other (apparently successful) suits against police officers in other jurisdictions. While the Court may not be able to definitively say Deputy Rich had probable cause to arrest Bristol for obstruction, Bristol's actions come mighty close to meeting the standard, even without Deputy Rich's instruction to stay in the car.

probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

For more on that point, the Court looks to *Reid v. Henry County*, 568 F. App'x 745 (11th Cir. 2014). In *Reid*, an officer saw a driver change lanes without using a turn signal. *Id.* at 746–47. The officer then initiated a traffic stop. *Id.* During that stop, the driver was evasive and argumentative. *Id.* at 747. Sound familiar yet? Eventually the officer arrested the driver for violating Georgia's obstruction statute. *Id.* On appeal, the Eleventh Circuit avoided the question of whether the officer had probable cause for the arrest based on obstruction because an easier answer was available. As the court explained: "The existence of a traffic violation can provide an officer with arguable probable cause to make an arrest, even though the offense is minor or normally punishable by a monetary citation[.]" *Id.* at 748. The court continued, reasoning that if probable cause existed for an arrest as to any offense, "the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges." *Id.*[7]

---

[7] *See also Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) ("As long as the officers had some reasonable basis to believe Mr. Barna had committed a crime, the arrest is justified as being based on probable cause. Probable cause need only exist as to any offense that could be charged under the circumstances."); *Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007) ("Thus, the probable cause analysis in this case need not be limited to whether Officer Rodriguez had probable cause to arrest Williams for driving under the influence or the obstruction of traffic violations for which he was later charged. Instead, the issue is whether a reasonable officer, with the same information known to Officer Rodriguez at the time, would have had probable cause to arrest Williams for any offense."); *Apodaca v.*

Accordingly, the traffic violations created sufficient probable cause for an arrest—and once there is probable cause for an arrest, the remaining statutory grounds cited by Deputy Rich do not matter. *See Clark*, 32 F.4th at 1089 n.2 ("The parties dispute other statutory grounds for the probable cause to arrest, including reckless conduct, obstruction, and fleeing and eluding an officer. Because the traffic violation was sufficient to create probable cause to arrest, we need not address the other grounds mentioned in the briefs."); *Durruthy v. Pastor*, 351 F.3d 1080, 1090 (11th Cir. 2003) ("While Durruthy was charged with violating only Fla. Stat. § 843.02, Pastor is shielded by qualified immunity so long as she had probable cause to arrest Durruthy for *any* offense."); *see also Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992) ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.").

Finally, as to Bethune, Butts County makes it an offense to commit acts described as "disorderly conduct" by the ordinance. Butts Cnty., Ga. Ordin. § 58-66. Relevant here, § 58-67 defines disorderly conduct as, *e.g.*, "[a]ttempt[ing] to hinder, delay, obstruct or prevent any law enforcement officer from performing his duty[.]" *Id.* at § 58-67 (20).

---

*City of Albuquerque*, 443 F.3d 1286, 1290 (10th Cir. 2006) ("An arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as the circumstances, viewed objectively, justify the arrest."); *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013) ("Once Officer Snyder had probable cause to conduct the traffic stop of Jones for speeding, he could arrest Jones without violating his Fourth Amendment rights.").

Throughout the entire 25-minute video, Bethune hurled insults, expletives, and loosely veiled threats at the officers. To be sure, in this country, you have a right to be rude and act like a total jerk to police officers. And, although being a jerk in and of itself doesn't automatically give rise to probable cause for disorderly conduct, *Croland v. City of Atlanta*, 782 F. App'x 753, 758 (11th Cir. 2019), Bethune's clear disobedience of Deputy Rich's instructions does. *See, e.g.*, *Jaipersaud v. Ashley*, No. 1:10-CV-0455-SCJ, 2012 WL 12832382, at *4 (N.D. Ga. Feb. 9, 2012) ("Here, the Court has noted, that the disorderly conduct ordinance prohibits an individual from obstructing a law enforcement officer's lawful performance of his duties. Thus, even if Detective Ashley did not have probable cause to arrest Mrs. Jaipersaud for a violation of subparagraphs (c) and (k) of the disorderly conduct ordinance, he would be entitled to qualified immunity if there existed arguable probable cause for obstruction either under the disorderly conduct ordinance or under Georgia's misdemeanor obstruction statute, O.C.G.A. § 16-10-24(a).").

Even worse for Bethune, Defendants correctly point out that his own Complaint pleads him right out of court. Namely, Bethune pled that he was charged and convicted of violating Butts County Ordinance § 58-66(21). [Doc. 1-1, ¶ 216 ("Plaintiff Bethune served 45 minutes in jail, paid bail in the amount of ($245.00) and was convicted resulting in fines imposed on Bethune.")].

That admission-via-pleading allegation presents two problems for Bethune. As an initial matter, *Heck v. Humphrey* comes front and center. 512 U.S. 477 (1994). *Heck* requires that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486-87. The majority of Bethune's claims—*e.g.*, false arrest, false statements, First Amendment retaliation, etc.—would require this Court to call into question the validity of his underlying conviction. *Heck* doesn't allow that.

Even more damning is that a conviction—whether by a jury or admission of guilt—is a pretty strong (if not foolproof) indicator of probable cause. *Captain Jack's Crab Shack, Inc. v. Cooke*, No. 21-11112, 2022 WL 4375364, at *12 (11th Cir. Sept. 22, 2022); *Holley v. Town of Camp Hill*, 351 F. Supp. 3d 1359, 1361 (M.D. Ala. 2018); *Hall v. Smith*, 170 F. App'x 105, 107 (11th Cir. 2006) ("Moreover, the judicially[ ] recognized fact that Hall subsequently pled no contest and was adjudged guilty demonstrates his detention was not unreasonable or unlawful.").

Bethune's counter is simply that "there is no record of any charge against Bethune in [Butts County courts] other than the booking report." [Doc. 8, p. 3]. But facts

raised in briefs are not properly asserted. Instead, "the Court can only consider facts contained within the pleadings." *Donaldson v. Ga. Dep't of Corr.*, No. 5:23-CV-00139-TES, 2023 WL 4290059, at *6 (M.D. Ga. June 30, 2023); *see e.g.*, *Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) ("Because Huls raised this argument for the first time in his response to Llabona's motion to dismiss, instead of seeking leave to file an amended complaint, pursuant to [Federal Rule of Civil Procedure] 15(a), it was not properly raised below."). And Plaintiffs' Complaint is unequivocal on the matter—Bethune clearly plead that he was *convicted* of disorderly conduct. The Court must accept the facts in Plaintiffs' Complaint as true. That's what controls here.[8]

### ii.    Count 1: First Amendment Retaliation

A First Amendment retaliation claim requires that a plaintiff establish that (1) he engaged in constitutionally protected speech; (2) the defendant's retaliatory conduct adversely affected that protected speech; and (3) there was a causal connection between the retaliatory actions and the adverse effect on speech. *Zen Grp., Inc. v. Agency for Health Care Admin.*, 80 F.4th 1319, 1329 (11th Cir. 2023).

When a plaintiff alleges that retaliatory conduct is an arrest or seizure, the absence of probable cause must be shown to establish the causation link. *See Nieves v. Bartlett*, 587 U.S. 391, 405 ("The presence of probable cause should generally defeat a

---

[8] And, making matters worse, Bethune didn't amend his Complaint in response to Defendants' arguments. It's hard to imagine that an individual who wasn't actually convicted of a crime would allow their own allegation to the contrary to stand without correcting it.

First Amendment retaliatory arrest claim."); *Reichle v. Howards*, 566 U.S. 658, 664–65 (2012) ("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause . . . ."); *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1304 (11th Cir. 2019). As discussed above, because probable cause existed to arrest Plaintiffs, their First Amendment claims fail. *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018).

Even aside from that finding, though, Plaintiffs have failed to "plausibly allege an absence of probable cause." *Turner v. Williams*, 65 F.4th 564, 585 (11th Cir. 2023). Plaintiffs only allege that they were "not unlawful nor did Plaintiffs have the specific intent to commit obstruction or disorderly conduct[.]" [Doc. 1-1, ¶ 37]. Indeed, throughout Plaintiffs' entire First Amendment count, the term "probable cause" does not appear. [*Id.* at ¶¶ 34–42]. "Probable cause" doesn't appear in the Complaint until count 2, which is unrelated to Plaintiffs' First Amendment claim. [*Id.* at ¶ 50]. Strip away the legal conclusions, *McCullough*, 907 F.3d at 1333, and what's left does not adequately plead the absence of probable cause.

But, the Eleventh Circuit recognizes two potential exceptions to this general rule. First, the Supreme Court developed an exception in *Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018), which looks to "five factual circumstances" that must be present to sustain the exception. *See Turner*, 65 F.4th at 585. And the second exception is

"warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* (citing *Nieves*, 587 U.S. at 406–07).

The Court does not dive into the *Lozman* circumstances because those are reserved for situations involving premeditated retaliation and the specific targeting of an individual. *Lozman*, 585 U.S. at 586; *Turner*, 65 F.4th at 586 ("Turner's Complaint . . . fail[s] to allege a premeditated plan."). Here, Plaintiffs allege various policies and customs, but lack any allegation that their respective arrests stemmed from a premeditated plot schemed up by Deputy Rich and Sheriff Long to specifically target them.

As to the second possible exception—sometimes called the "differential treatment exception"—Plaintiffs needed to allege "objective evidence" that they were "arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Turner*, 65 F. 4th at 588–89 (citing *Nieves*, 587 U.S. at 407). That's just simply not alleged anywhere in the Complaint.

Taken together, Plaintiffs' First Amendment claims fail as a matter of law. *See id.* ("Since Turner's Complaint does not adequately allege an absence of probable cause—in fact, we find as a matter of law that there was probable cause to arrest Turner—and the Complaint does not allege facts sufficient to satisfy either the *Lozman* or the differential treatment exceptions, Turner's § 1983 First Amendment retaliation claim

against Williams based on Turner's arrest was properly dismissed by the District Court as failing to state a claim.").

iii.    <u>Counts 2 & 3: Fourth Amendment</u>

Plaintiffs allege, as best the Court can tell, three violations of the Fourth Amendment: (1) false arrest; (2) false affidavits;[9] and (3) malicious prosecution. The Court addresses each in turn.

A.    *False Arrest & False Imprisonment*

"To succeed on a false arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022). "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a [§] 1983 claim." *Baxter v. Roberts*, 54 F.4th 1241, 1265 (11th Cir. 2022) (citation omitted.) On the other hand, the existence of probable cause constitutes an absolute bar to a § 1983 action for false arrest, even if a minor offense is involved. *Id.*; *see also Brooks*, 78 F.4th at 1281.

"A false imprisonment claim under § 1983 requires meeting the common law elements of false imprisonment and establishing that the imprisonment was a due

---

[9] In count three, Plaintiffs allege a § 1983 claim against Deputy Rich for a "false affidavit." [Doc. 1-1, ¶ 71]. But, courts considering similar claims have merged such counts with claims under the Fourth Amendment. *Dempsey v. Brevard Cnty.*, No. 6:21-CV-1763-PGB-LHP, 2023 WL 7926883, at *4 (M.D. Fla. Mar. 14, 2023); *Hill v. Lee Cnty. Sheriff's Off.*, No. 2:11-CV-242-FTM-29, 2012 WL 4356818, at *13 (M.D. Fla. Sept. 24, 2012); *Tallie v. Pittsburg Police Dep't*, No. 22-3152-SAC, 2022 WL 4547449, at *1 (D. Kan. Sept. 29, 2022). The Court will follow the lead of these courts and analyze the claim under the Fourth-Amendment framework.

27

process violation under the Fourteenth Amendment." *Helm v. Rainbow City.*, 989 F.3d 1265, 1278 (11th Cir. 2021) (citing *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009)). "The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement." *Campbell*, 586 F.3d at 840. Like false arrest, a claim of false imprisonment under § 1983 fails if the officer has probable cause to arrest. *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009).

Once again, the Court makes quick work here: Probable cause equals no false arrest or false imprisonment claim as a matter of law. *Quire v. Miramar Police Dep't*, 595 F. App'x 883, 886 (11th Cir. 2014) ("Claims for false arrest and false imprisonment under § 1983 fail as a matter of law if there was probable cause for the arrest.").

### B.    *False Affidavit*

First, it is unclear what harm the allegedly false affidavit caused Plaintiffs. The affidavit was sworn on March 29, 2022, but the arrests occurred the day before. [Doc. 1-1, ¶ 38]. Even more, Plaintiffs only allege that Deputy Rich made "false statements or omissions," but the Complaint does not specify what exactly those statements or omissions were. Without such allegations, he cannot state a plausible Fourth Amendment claim arising from the affidavit. *See Estate of Redd v. Love*, 62 F. Supp. 3d 1268, 1274 (D. Utah 2014) (finding plaintiff had not plausibly alleged a Fourth Amendment violation arising out of a "false" warrant application where the complaint "failed to mention the contents of the warrant or the contents of the warrant affidavit");

*Allen v. Cunningham*, 51 F.3d 285 (table), 1995 WL 143130, at *5 (10th Cir. 1995) ("While it is clearly in violation of the Fourth Amendment to base a search warrant on false information, the [p]laintiff fails to allege which [d]efendants gave what false information, let alone prove that there was any false information."). Aside from legal conclusions, Plaintiffs' "False Affidavits" count is a bare-boned assertion that Deputy Rich lied. That is not enough.[10]

Regardless, this Court determined Deputy Rich acted within his lawful means. Accordingly, no claim for "false affidavit" can succeed.

### C.     *Malicious Prosecution*

For a Fourth Amendment malicious prosecution claim, Plaintiff must prove "he suffered a seizure pursuant to legal process that violated the Fourth Amendment . . . and satisfy the elements of the common law tort of malicious prosecution." *Luke v. Gulley*, 975 F.3d 1140, 1143 (11th Cir. 2020) (citation omitted). The Supreme Court has identified the Fourth Amendment as the source of constitutional rights for "deprivations of liberty that go hand in hand with criminal prosecutions." *Albright v. Oliver*, 510 U.S. 266, 274 (1994) (citation omitted); *see also Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir. 1996) ("[A]n allegation of prosecution without probable cause must . . . be analyzed under the Fourth Amendment . . . ." (citation omitted)). Therefore, to advance

---

[10] To the bigger picture, though, it is hard to square Plaintiffs' claims of a false affidavit when their own Complaint largely tracks the affidavit's telling of the events. *Compare* [Doc. 1-1, ¶¶ 16–18 (describing how Bristol got out of his car and approached Deputy Rich)], *with* [Doc. 3-1 (same)].

their Fourth Amendment malicious prosecution claim, Plaintiffs need to demonstrate they suffered a seizure pursuant to legal process. *Luke*, 975 F.3d at 1143; *Dillard v. Lauderdale Cnty..*, No. 3:21-CV-00295-HNJ, 2022 WL 989023, at *14 (N.D. Ala. Mar. 31, 2022).

Recognizing the overlap between a Fourth Amendment violation pursuant to legal process and a common law malicious prosecution claim, the Eleventh Circuit explained that "[w]e can simplify our standard for malicious prosecution into two elements: the plaintiff must prove (1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to [constitutionally infirm] legal process and (2) that the criminal proceedings against him terminated in his favor." *Luke*, 975 F.3d at 1144.

Not to beat a dead horse, but the existence of probable cause bars claims for malicious prosecution. *Pitts v. Grant*, No. 21-12759, 2022 WL 1117454, at *3 (11th Cir. Apr. 14, 2022) ("Where probable cause exists, a malicious prosecution claim will fail."). That means, again, Plaintiffs' claims fail as a matter of law.

### iv.    Count 4: Eighth Amendment

"It is well settled that the Eighth Amendment prohibitions against cruel and unusual punishment do not apply to pretrial detainees." *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1539 n.3 (11th Cir. 1994); *see also Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). It is undisputed that, at the time of the encounter, Plaintiffs were at most pre-

trial detainees. Accordingly, Plaintiffs' claims under the Eighth Amendment also fail as a matter of law, and the Court, instead, considers Plaintiffs' excessive-force claims under the Fourteenth Amendment. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.").

v.    <u>Count 5: Fourteenth Amendment</u>

Plaintiffs' Fourteenth Amendment claim solely rests on their allegation that "Deputy R[ich] used excessive force when handcuffing Plaintiffs." [Doc. 1-1, ¶ 113]. "For purposes of claims under § 1983, three constitutional provisions protect a right to be free from excessive force: the Fourth, Eighth, and Fourteenth Amendments." *Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021). "[U]nder the Supreme Court's current framework, the Fourth Amendment covers arrestees, the Eighth Amendment covers prisoners, and the Fourteenth Amendment covers those who exist in the in-between— pretrial detainees." *Id.*[11] The question, then, becomes whether the use of force was objectively reasonable under the circumstances. In analyzing whether the use of force

---

[11] The *Crocker* court explicitly declined to decide when an individual leaves the Fourth Amendment "arrestee" realm and enters the Fourteenth Amendment "pretrial detainee" arena. *Crocker*, 995 F.3d at 1247. Regardless, the standards for Fourth and Fourteenth Amendment excessive-force claims are the same. *Id.* ("So, as we said in [*Patel v. Lanier County*, 969 F.3d 1173 (11th Cir. 2020)], our Fourteenth Amendment excessive-force analysis now tracks the Fourth Amendment's 'objective-reasonableness' standard rather than the Eighth Amendment's 'malicious-and-sadistic standard.'").

was objectively reasonable, the Court considers: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Stephens v. DeGiovanni*, 852 F.3d, 1298, 1324 (11th Cir. 2017). This "fact-specific inquiry takes into account facts as they reasonably appeared to the [officer]." *Id.*

"In the Fourteenth Amendment context—and the Fourth as well, for that matter—[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Crocker*, 995 F.3d at 1251; *Huebner v. Bradshaw*, 935 F.3d 1183, 1191 (11th Cir. 2019) ("We have long and repeatedly recognized that when making a custodial arrest, some use of force . . . is necessary and altogether lawful.") (citations omitted). For example, precedent is clear that pain and skin abrasions from handcuffs is not enough to rise to the level of excessive force. *Gold v. City of Miami*, 121 F.3d 1442, 1447 (11th Cir. 1997); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) ("Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal."); *Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019). Those types of injuries are exactly what Plaintiffs claim here. [Doc. 1-1, ¶¶ 112–120]. That means the claims fail as a matter of law. *Vinyard v. Wilson*, 311 F.3d 1340, 1349 n.13 (11th

Cir. 2002) (collecting cases finding that painful handcuffing, without more, is *de minimis* and "not excessive").[12]

c.    *Clearly Established Law*

In the end, Plaintiffs have failed to allege any constitutional violation committed by Deputy Rich. That is enough to end the case. *Purcell ex rel. Est. of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1324 (11th Cir. 2005) ("About immunity, we need not address the element of preexisting clearly established law. But out of an abundance of caution, we state the obvious: because we see no federal constitutional violation, it follows that no preexisting law put [d]efendants on notice that the jail conditions at Toombs County clearly violated the Constitution.").

Maybe recognizing this flaw themselves, Plaintiffs didn't even engage with the final prong of the qualified immunity analysis—*i.e.*, they did not point to any clearly established law showing Deputy Rich's actions were unconstitutional. The "clearly established" requirement may be met by one of three showings: (1) a materially similar

---

[12] To the extent Bethune alleges Deputy Rich "grasped [his] genitals for an unreasonable and unusual amount of time," [Doc. 1-1, ¶ 23], the Court finds the video clearly disproves that claim. The video shows Deputy Rich taking items out of Bethune's pockets and doing a pat-down. [Doc. 5, Body Camera Video, 23:50:43–51:41]. At one point during the pat-down, Bethune says "that's my dick," after which, Deputy Rich quickly pulled back his hands and finished the search. [*Id.*]. That does not rise to the level of excessive force or any other constitutional violation. *Young v. Poff*, No. 04CV320, 2006 WL 1455482, at *4 (W.D.N.Y. May 22, 2006); *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002) (rejecting a Fourth Amendment pat down claim alleging sexual fondling by concluding that officers "as a matter of standard procedure are permitted to feel over clothing for bulges in an area known by them as a common place for hiding contraband").

case has already been decided;[13] (2) an accepted general principle should control the novel facts of the case with obvious clarity; or (3) the conduct in question so obviously violated the Constitution that no prior case law is necessary. *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204–05 (11th Cir. 2012). In other words, they needed to point to caselaw that "establishes a 'bright line' in such a 'concrete and factually defined context' to make it obvious to all reasonable government actors, in the defendant's position, that the actions violate federal law." *Thompson v. City of Birmingham*, 5 F. Supp. 3d 1304, 1314 (N.D. Ala. 2014) (citing *Scarbrough v. Myles*, 245 F.3d 1299, 1301 (11th Cir. 2001)). Indeed, "if caselaw, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997); *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000).

Instead of following the required framework, as discussed *supra*, Plaintiffs' Response only cites to Georgia caselaw regarding *official* immunity. That does not carry their burden on *qualified* immunity for claims dealing with federal law. Therefore, qualified immunity shields Sheriff Long and Deputy Rich. *Ashley v. Bennett*, No. 21-14178, 2022 WL 15174840, at *3 (11th Cir. Oct. 27, 2022).

---

[13] If relying on a case to try and show law that is clearly established, a plaintiff must rely on published, binding opinions of the United States Supreme Court, Georgia Supreme Court, or Eleventh Circuit. *Youmans v. Gagnon*, 626 F.3d 557, 565 (11th Cir. 2010).

IV.    **Supervisor Liability/*Monell* Claims**

To be liable as a supervisor under § 1983, an individual must (1) personally participate in the unconstitutional conduct, or (2) have some causal connection between their acts and the alleged constitutional deprivation. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). For that causal connection, a plaintiff must show that (1) the supervisor was on notice, by history of widespread abuse, of the need to correct a practice and failed to do so, (2) a policy or custom resulted in deliberate indifference, (3) the supervisor directed a subordinate to act unconstitutionally, or (4) the supervisor knew of a subordinate's unlawful conduct and failed to stop it. *Id.* But these deprivations and violations must be "obvious, flagrant, rampant and of continued duration[.]" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).

To impose *Monell*[14]—or "municipal"—liability, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021).

The Court need not dive deep into these claims because as a precursor to supervisor or *Monell* liability, "common sense; basic logic; and most importantly,

---

[14] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (finding a cause of action against local governments under § 1983).

binding case law dictates that there must first be an underlying constitutional violation." *Middlebrooks v. City of Macon-Bibb Cnty.*, No. 5:23-CV-00083-TES, 2024 WL 555884, at *18 (M.D. Ga. Feb. 12, 2024). In other words, "[t]here can be no supervisory or municipal liability absent an underlying constitutional violation." *James v. City of Huntsville,* No. 5:14-CV-02267-SGC, 2015 WL 9268159, at *2 (N.D. Ala. Dec. 21, 2015) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008); *Vineyard v. Cnty. of Murray.*, 990 F.2d 1207, 1211 (11th Cir. 1993)). As discussed *supra*, Plaintiffs failed to show any constitutional violation. Therefore, as a matter of law, there can be no supervisory or *Monell* liability. *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) (holding that "in the absence of a constitutional deprivation," a plaintiff cannot "sustain a cause of action . . . under [§] 1983").

## V.    <u>Georgia-Law Claims</u>

"[S]tate courts, not federal courts, should be the final arbiters of state law[.]" *Iraheta v. Houston Cnty.*, 5:21-CV-00104-TES, 2022 WL 209273, at *11 (M.D. Ga. Jan. 24, 2022). And when a federal court dismisses the federal claims before it, there is a "strong argument" for remanding or dismissing the remaining issues. *Id.*; *see also Dixie Elec. Co-op. v. Citizens of State of Ala.*, 789 F.2d 852, 858 n.19 (11th Cir. 1986) ("Where state law issues dominate, the matter to be adjudicated is primarily one of state interest; if the claim forming the basis of federal jurisdiction is dismissed early in the proceeding, discretion should be exercised in favor of a remand and against deciding the remaining

claims."). With that in mind, the Court exercises its wide discretion and remands the Georgia-law issues to the Superior Court of Butts County, Georgia. *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 866 (11th Cir. 2022) ("A district court, exercising its already broad discretion, will rarely err by declining supplemental jurisdiction after the federal claims that supported its jurisdiction are dismissed.")

<u>CONCLUSION</u>

Based upon the foregoing, the Court **GRANTS-IN-PART** Defendants' Motions to Dismiss [Doc. 3], [Doc. 4], and **DISMISSES** Plaintiffs' federal-law claims (counts 1-5) **with prejudice**. As for the remaining claims, the Court **REMANDS** the Georgia-law claims to the Superior Court of Butts County, Georgia.

**SO ORDERED**, this 24th day of July, 2024.

<u>S/ Tilman E. Self, III</u>
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**